## Condemnation of Right of Way in Greencastle Borough

*William R. Davis*, for Commonwealth.

*Rudolf M. Wertime*, for condemnees.

DEPUY, P. J., October 20, 1965.—On July 15, 1965, the Pennsylvania Department of Highways, pursuant to section 402 of the new Eminent Domain Code approved June 22, 1964, P. L. 84, 26 PS §1-402, filed in our court of common pleas a declaration of taking under the above caption. The declaration avers that the condemnation was approved when the Governor, on March 16, 1965, signed the plan entitled "Drawings designating future location and width and authorizing condemnation of right of way in construction of Legislative Route 28004, Section 5, in Franklin County", and that a copy of the plan was recorded on March 25, 1965 (drawer 12), in our recorder's office.

The declaration recites that the purpose of the condemnation is to obtain an easement for highway purposes.

The declaration includes the names of 14 condemnees owning real estate affected by the taking, parcel no. 13 being that of Rudolf M. and Phyllis Carrington Wertime, his wife, plan no. 2802394. A draft showing

the extent of the taking upon each property was annexed to the declaration.

On August 21, 1965, Rudolf M. Wertime and wife filed preliminary objections to the declaration of taking. The Commonwealth filed an answer on September 15, 1965.

On application of Commonwealth counsel, the case was set down for argument on September 30, 1965, on the preliminary objections and answer. Following argument and submission of briefs, the Commonwealth has requested that the objections be promptly disposed of as the letting of a contract for the construction work is being held up.

The landowners, the Wertimes, state the following considerations are fundamental in examining the present problem:

1. The Eminent Domain Code of 1964 is intended to provide a complete and exclusive method for governing all condemnations of property for public purposes in the Commonwealth and the assessment of damages therefor.

2. Preliminary objections are the exclusive method for challenging the right and power of the condemnor to appropriate the condemned property. Failure to raise these issues by preliminary objections will constitute a waiver thereof.

3. Inconsistent preliminary objections may be raised at one time.

4. When issues of fact are raised, the court must take evidence thereon.

The landowners consider the specific issues before the court at this time to be (1) whether the objections filed by them state valid reasons for attacking the declaration of taking, and (2) whether the objections raise factual questions upon which evidence must be taken.

Section 406 of the Eminent Domain Code provides, in part, as follows:

"(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. . . . Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

"(b) Preliminary objections shall state specifically the grounds relied upon. . . .

"(e) The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. If an issue of fact is raised, the court shall take evidence by depositions or otherwise. The court may allow amendment or direct the filing of a more specific declaration of taking."

Because the Eminent Domain Code has been enacted so recently, no interpretative decisions by the courts are to be found in Purdon's Annotated Statutes: 26 PS §1.

The code undertakes to consolidate all previous legal and equitable remedies relative to eminent domain and to create certain new remedies in favor of the parties to condemnation proceedings.

The landowners argue that though the drafters of the Eminent Domain Code have, in section 406, used the terminology "preliminary objections" and a great body of law concerning preliminary objections exists in our courts of common pleas, based on the rules of civil procedure promulgated in recent years by our Supreme Court, these interpretations do not control the action of the courts with regard to the new variety of "objections" created by the Eminent Domain Code. As

a general rule, preliminary objections, as we have known them under the rules of civil procedure, deal with questions of form and procedure rather than substance. (But in case of demurrer, it would seem that matters of substance are reached.)

In sum, the landowners here contend that distinct from the practice under the rules of civil procedure, the preliminary objections envisaged by the Eminent Domain Code have a broader scope and may properly reach questions of substance as well as of form. No authority has been cited for this proposition.

The landowners argue that whereas, under the practice existing before enactment of the Eminent Domain Code, a landowner, threatened with irreparable injury from a condemnation which did not meet the requirements of law, had to resort to equity for relief, this avenue is now closed in favor of the exclusive remedy afforded by the Eminent Domain Code.

The objections filed by the Wertimes in nine paragraphs, specify, as we see it, the following primary difficulties arising from the declaration of taking:

(a) The condemnation embraces portions of condemnees' property which are unnecessary for improvement of the public road known as legislative route 28004, sec. 5.

(b) The landowners have requested the Commonwealth, by using vacant land there, to push to the north the new line of the highway in front of the owners' real estate, but the Commonwealth has declined to do so.

(c) The construction plan filed shows that a cut exceeding five feet in depth will be made in front of the Wertime dwelling which will result in a steep slope in front of their home, and will cause them irreparable damage and interference with access to their property, not compensable by money damages, that such a cut will necessitate loss of valuable trees and shrubbery of

the owners, necessary for the landscaping of their property, and that no provision is made for extension of presently existing underground storm drains to carry water to the street from the roof of the owners' dwelling, with the result that storm water will not be properly disposed of and will cause damage to the owners' dwelling and to adjoining property.

At the argument, the owners made clear they are as interested as anybody in the reconstruction of the Leitersburg road and that their only objection is to the location of the lines on which the State proposes to reconstruct the said highway in front of the Wertime property.

The Commonwealth argues that the Secretary of Highways possesses by law the sole and exclusive administrative discretion to determine when and where a highway is to be built or reconstructed and that, in the absence of his arbitrary or fraudulent action, the matter of necessity that certain lands be taken by the State is not subject to judicial review. No arbitrary or fraudulent action by the secretary has been pleaded here, nor have any facts tending to establish such action been pleaded.

On the second question raised by the owners, the Commonwealth takes the position that the presence of vacant land opposite the owners' property is immaterial, that the location of a highway by the secretary is not subject to objections lying in the judicial realm, and that the Secretary of Highways possesses the sole and exclusive administrative discretion in determining the contour of a proposed highway and that this discretion is not subject to judicial review.

Likewise, the Commonwealth, as in proposition (a), contests the relevancy and materiality of the objection and argues that the property of condemnees is necessarily subject to the Commonwealth's sovereign power of condemnation for the construction or improvement of public highways, subject only to proper payment

for damages caused to property, and that the presence of trees or shrubbery on land to be taken or damaged in the neighborhood of a dwelling is not subject to judicial review under the Eminent Domain Code of 1964, or otherwise.

On the question of water drainage from the owners' dwelling, the Commonwealth contends such a matter cannot be decided by a court, that provision has been made, or will be made, by the State for such drainage, and that failure of the plan filed to show details as to drainage structures is not a proper ground for filing preliminary objections.

The Commonwealth contends that none of the issues raised by the preliminary objections of the owners is germane to the proper scope of preliminary objections as intended by section 406(a) of the Eminent Domain Code of 1964.

The Commonwealth argues that there are no disputed facts before the court on which evidence should be taken, in that no legal issue within the scope of the Eminent Domain Code or section 406(a) thereof has been properly raised by the preliminary objections and that the objections should be dismissed.

The Commonwealth concedes that a condemnation can be effectively challenged if the landowner can aver and prove that action of the Secretary of Highways is arbitrary, capricious or fraudulent. The preliminary objections contain no such averment.

We have embraced under paragraph (c) the Wertime paragraphs 3, 4 and 5 of the preliminary objections. The Commonwealth argues that all these matters must be resolved into elements of money damages for which the Wertimes must be compensated in a damage award. The Commonwealth says it is simply a matter of having a board of viewers include within its computations whatever the State should pay the owners for the taking of land and for other harm caused to their property.

The intention of the new Eminent Domain Code is widely said to be the enlarging of the rights of landowners in condemnations. But we cannot think it was intended to make the courts competent to decide questions of the type posed by the objections here. Obviously, a massive taking of evidence and a massive requirement of engineering skill would be faced if the court were to set out to determine anew whether the Secretary of Highways has properly laid out the lines of the work to be done in reconstructing the Lietersburg road, whether the line of the road should be moved northward into the vacant land spoken of by the owners, or whether the Commonwealth should be required to pay for constructing a stone wall in front of the owners' property to hold the land and thus avoid destruction of important landscaping presently situated there.

The possibility of entering upon such litigation could prove of interest to a large number of landowners and could well interrupt for long periods of time, if not permanently, the construction of important public highways.

It is impossible to make an omelet without breaking eggs. It is unlikely that important steps in human progress can be made in this complex world without causing injuries to individuals. In the achieving of just compensation, perfection is not reached in every instance. As all of us are aware daily, perfection is not of this world.

Our conclusion is that there is no factual issue which the court is legally competent to decide and on which evidence should be taken. The preliminary objections must be dismissed.

Now, October 20, 1965, preliminary objections filed by the condemnees are dismissed. Exception granted to the condemnees.